EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Plaintiff,

v.

MEAD FOODS, INCORPORATED,
Defendant.

No. CIV–75–0875–D.

United States District Court,
W. D. Oklahoma.

March 28, 1977.

Abner W. Sibal, Gen. Counsel, EEOC,
William L. Robinson, Associate Gen. Coun-
sel, EEOC, George H. Darden, Acting Re-
gional Atty., EEOC, Washington, D. C.,

Richard C. LaFond, Trial Atty., EEOC, Denver, Colo., for plaintiff.

Coleman H. Hayes, Oklahoma City, Okl., for defendant.

Deanna R. Fitzgerald, Amarillo, Tex., for intervenor Jacqueline Chapman.

## MEMORANDUM OPINION

DAUGHERTY, Chief Judge.

Plaintiff Equal Employment Opportunity Commission (EEOC) brings this action against the Defendant, Mead Foods, Incorporated, under the authority of the Equal Employment Opportunities Act, 42 U.S.C. § 2000e–5(f)(1) (Act). Defendant is an employer under the Act. Plaintiff alleges that Defendant engages in sex discrimination in its employment practices. Jacqueline Chapman, a former female employee of Defendant, filed a charge against Defendant alleging unlawful employment practices in the nature of sex discrimination. All conditions precedent to the maintenance of this action have been met.

Defendant operates five bakeries and one frozen food store in Oklahoma, Texas and New Mexico. Employment of personnel is accomplished locally at each facility. Accounts payable are paid out of Defendant's main office in Amarillo, Texas. Each facility is responsible for local collection of accounts receivable from customers. In 1971–2 each bakery had a plant manager and an office manager. The office manager at Amarillo, Texas (Juanita Pearcy), at Lawton, Oklahoma (Jacqueline Chapman) and at Albuquerque, New Mexico (Sandra Seymour) were females. The other two office managers were males. M. L. Vaughn was a vice-president of Defendant and a brother of Mrs. Mead, one of the owners of Defendant. Vaughn announced a policy of replacing the three female office managers with males with college degrees and preferably with training and experience in accounting. The Defendant was then having serious financial problems. The stated purpose of Mr. Vaughn for this change was to upgrade accounting procedures at each facility, improve sales ticket verification with routemen, and improve and speed up periodic inventory reports. These were all the responsibilities of the local office managers. Defendant caused an ad to be run in a Lawton newspaper for a male with qualifications to be an office manager.[1] During 1971 and 1972 the three female office managers were demoted to clerk and males were employed as office managers. Successive males were thereafter employed at some locations. The two existing male office managers were not changed. For the most part the male office managers had college degrees and experience in accounting though some did not. When the female office managers were so demoted, their rate of pay was not changed nor were their working hours changed. They were required to train or acquaint their male successors with office routine. It appears that some college or correspondence course educational opportunities in the accounting field were afforded the males with partial financing by Defendant. The females had not been afforded this opportunity.

The evidence is in some conflict but the weight of the evidence indicates and the Court so finds that local office procedures and methods of accounting were changed in some respects upon the advent of the three new male local managers and there was a noticeable improvement in the accounting system, ticket verification and quality in and promptness in submitting inventory reports.

Jacqueline Chapman was dissatisfied with her demotion and as aforesaid filed a sex discrimination charge against Defendant with the EEOC immediately upon her demotion. The other two female office managers did not so proceed and all three continued in employment with Defendant. In about six months Jacqueline Chapman was terminated by Mr. Vaughn on the grounds of creating dissension and turmoil in the office, particularly, for encouraging other female employees in this direction and for her lack of cooperation with her superiors.

---

1. No such ads are now run nor have any been run since Mr. Vaughn was terminated.

It is Plaintiff's position in this litigation that the three female office managers were demoted and Jacqueline Chapman was terminated because of their sex. Further, that in violation of the Act Jacqueline Chapman was terminated in retaliation for filing her EEOC charge against Defendant. It is Defendant's position that the accounting work in the three offices with female managers was in dire need of improvement for the betterment of Defendant's operation and that the desired quality of such work was beyond the capabilities of the three female office managers. Further, that Jacqueline Chapman was not terminated because of sex but because she created dissension and turmoil in the office and failed and refused to cooperate with her office manager. Further, that she was not terminated in retaliation for filing her EEOC charge but for the aforesaid reasons and had there been an act of retaliation she would have been terminated long before she was.

The issues have been separated herein for the purposes of trial with the first hearing to pertain to whether Defendant has violated the Act as alleged and the second hearing to pertain to appropriate relief should the Court find a violation of the Act by Defendant in the hearing on the first issue.

Plaintiff has presented a large quantity of statistical evidence showing the percentage of the work force in each locality which is female as compared with male and Defendant's percentage of female employment in each locality and then for the entirety of Defendant's operation in both respects. In most instances it was below the percentage and in some few instances it was above. Overall, Defendant hired fewer females percentagewise than the percentage of females in the reported available working force. Plaintiff also presented statistics showing Defendant's several job classifications and the percentage of males and females in each. In some there were no females. In others females predominated. Also Plaintiff presented statistics which compared male rates of pay with those of females. However, Plaintiff's expert did not relate this pay comparison to either seniority or time of service in employment or the effect of existing union contracts.

■  Generally, it is true that Defendant hires fewer females percentagewise than exist in the overall work force, has more job classifications without females than with and the overall pay rates of females are somewhat less than that of males. Plaintiff urged in oral arguments that each of Defendant's facilities and each of Defendant's job classifications should contain females in the average percentage of availability in the work force and that their rates of pay should be the same as the males. It is, of course, true that statistics such as were presented by Plaintiff are admissible evidence and should be considered by the Court in connection with the issues between the parties. *Muller v. United States Steel Corporation*, 509 F.2d 923 (Tenth Cir. 1975).

■  Other evidence explained the statistical disparity pictured by Plaintiff to the satisfaction of the Court. The testimony of witnesses for both parties clearly established and common practical knowledge tells us that certain work in a bakery operation is not attractive to females. This is a fact of life that an Act of Congress cannot overcome. The baking operation itself is hot, heavy and hard work. Moreover, work in this phase of Defendant's operation must be accomplished at night so that fresh bread products are ready for early delivery the next morning. And the bakery must operate on weekends and holidays for people require bread products and the same are sold every day of the year. Women have been recruited for and placed in Defendant's baking operation. They have never lasted more than a few days. The work was simply not compatible with their personal interests and capabilities. Defendant's largest work force numerically consists of routemen. They make up nearly one-third of Defendant's total force of employees. This personnel sells and delivers bread and other bakery products of Defendant. They must arise at 3 a. m. each day in order to have fresh bakery products on the shelves of stores when they open for the public. They must drive heavy trucks con-

**4**

siderable distances each day and must handle heavy trays and racks of bakery products. Women have tried this job but apparently only one stuck it out. The hours and the nature of the work are not appealing to women. In the less demanding work environments than the baking operation and route service, Defendant's work force is generally heavy with women and far over the statistics presented as to the available work force. Defendant has a large employment turnover attributable in large measure to Defendant's requirement for night work, weekend work and early morning work as aforesaid. In several years it has been as high as 120% per annum. Males who stay with the job and do the heavy work obtain seniority and as a whole make more money than the females who do the lighter work in Defendant's operation.

In oral arguments at the completion of the evidence to the complete dismay of the Court the EEOC refused to accept the facts of life about work in a bakery and on bakery routes. Of course, had EEOC done so their statistics would have been answered on a basis other than sex.

On the evidence, the Court cannot and does not find that Defendant in its bakery operations displays any pattern of employment discrimination against women because of their sex. To the contrary, where the work is most desirable they employ women far in excess of their percentage of the available work force. It just so happens that a major part of their operations consists of jobs which generally do not appeal to the labor market and particularly do not attract female workers. The evidence indicated that 80% of Defendant's jobs are of this category.

■ Though the Court does not find from the evidence any general pattern or attitude of sex discrimination on the part of the Defendant, the weight of the evidence supports Plaintiff's contention that the three female office managers were individually demoted because they were women. This appears from the evidence to have, been the decision of M. L. Vaughn who was himself subsequently terminated by Defendant. Defendant now has two female office managers, one at Lubbock and one at Abilene (frozen food). All the witnesses indicated that the demotion of the three female office managers in 1971–2 was done solely by Mr. Vaughn—none of them claimed any participation in the decision. Mr. Vaughn did not testify in these proceedings. Some witnesses testified that better results did follow this decision of Mr. Vaughn. Others could see little difference. The Court is not surprised in this regard. It all depends upon whose side of this litigation the witness was on. Though Mr. Vaughn may have seen the need and wanted to upgrade the work in the local office managers and perhaps succeeded to some extent, the evidence before the Court has indicated he practiced sex discrimination in doing so in violation of the Act. The Court also notes that the officer of Defendant who was charged with promulgating and implementing Defendant's Affirmative Action Plan testified that Mr. Vaughn was not cooperative regarding this activity but that everyone else employed by Defendant was. He also testified that the Plan complied with the law.

■ Therefore, as to the three local office managers, the Court will move to the second phase of this litigation and consider the matter of appropriate relief. In this regard, however, the Court finds from the weight of the evidence that Jacqueline Chapman was not terminated because of her sex or in retaliation for filing her EEOC charge. Some circumstances may tend to support this claim. She thought so. However, the weight of the evidence is to the contrary. She was not terminated upon filing her charge or soon thereafter. She was terminated by Mr. Vaughn some six months thereafter and then only after she had, according to the evidence, disrupted the operation of Defendant in her facility and failed to cooperate with her superiors. Though she no doubt had strong feelings that her demotion was based on sex, she had an orderly remedy through duly constituted agencies and tribunals of the government to hear and remedy her grievance.

She was not entitled to take the law into her own hands and create disruption and disloyalty in the operation of her employer. The evidence clearly indicates to the Court that the activities of this employee after her demotion were improper and gave justification for her termination in the interest of Defendant's operation and the Court so finds. This employee herself testified that she had a strained working relationship after demotion with her office manager and that she resented him; that her pride was hurt by her demotion.

Therefore, in entertaining the second phase of this litigation the Court will not consider any damages which are sought on the basis that Jacqueline Chapman was terminated because of sex or in retaliation for her EEOC charge.

Judgment will be withheld on the decisions of the Court expressed herein with reference to the first phase of this litigation and the case will be set at an early date on the second issue herein.